Day, J.
The errors assigned present two questions: 1. Did the court err in permitting the defendant to prove admissions of the grantor to the plaintiff, that she and her husband, John Edgar, were divorced; 2. If not, is the judgment unsustained by the law and the evidence.
1. The plaintiff sought to establish his title to the land in dispute through a deed to him from Sarah Ann Edgar; he was, therefore, in privity of estate with her; and, for that reason, her admissions before the conveyance, which would have been admissible against her had she been plaintiff- in the action, were admissible against him. 1 Greenl. Ev., § 189.
He could recover only upon the strength of her title, which depended solely upon her being the wife relict of *592 John Edgar, deceased. To establish that fact, the plaintiff proved that Sarah Ann married Edgar in 184.1, and that he died in 1846 without issue. The plaintiff rested on the presumption that she continued to be the wife of Edgar until his death. To rebut this presumption, the defendant was permitted to prove, by said Sarah Ann’s admissions during the time she claimed to be Edgar’s wife, that she had procured a divorce.
This evidence was objected to, on the ground that a divorce is a matter of record an(j can not be proved by secondary evidence. This objection loses much of its force from the fact that the person who made the admissions, and whose interests were affected thereby, refused to disclose where the record could be obtained, thus putting it out of the powrer of the defendant to prove the alleged divorce by the record if it existed; therefore, the admissions of Sarah Ann, were, by reason of this concealment, the best evidence attainable by the defendant.
But admissions of a party relating to the contents of written instruments, in general, are not regarded as secondary evidence, and though they relate to a record, if the place where it can be obtained be coueealed by the party, they should form no exception to the rule.
The competency of such admissions as primary evidence, it is true, has often been denied, but the weight of authority, both in England and America, favors such admissibility. In Earle v. Picken, 5 C. & P. 542, it-was said by Mr. Justice Parke: “ What a party says is evidence against himself, as an admission, whether it relate to the contents of a written paper, or to any thing else.” In Smith v. Palmer, 6 Cush, 513, it was observed by the judge delivering the opinion of the court, that “ a party’s own statements and admissions are, in all cases, admissible in evidence against him, though such statements and admissions may involve what must necessarily be contained in some writing, deed, or record.” Accordingly, it was held in that case, that admissions of a party relating to a matter of record, were admissible. In Slatterie v. Pooley, 6 M. & W. *664, which is *593 the leading case on the subject, Parke, B., said: “ There have been many reported decisions, that whatever a party says, or his acts amounting to admissions, are evidence against himself, though such admissions might involve what must necessarily be contained in some deed or writing; for instance, a statement by a party, or one under whom he claims, that an estate had been conveyed to, or from such person, or that such person filled the character of assignee, which only could be by deed, or the like.” This extract from Baron Parke, not only maintains the principle in question, but it shows that it equally applies to the admissions of persons in privity with the party.
In Regina v. Basingstoke, 14 A. & E. 611, it was held by the Queen’s Bench, that the same principle applies to the acts of a party which amount to an admission of matters relating to written instruments; and, in delivering his opinion, Patterson J., said: “■ Slatterie v. Pooley” establishes that, if a party by words admits the contents of a written document, such an admission is legal evidence against him; not as secondary evidence of the contents of the written instrument, but as original evidence. Such an admission is like an estoppel, and as is well put in a note to the case of the Duchess of Kingston, in Smith’s Leading Cases, it is used, ‘ not to supply the absence of the ordinary instruments of evidence, but to supersede the necessity of any evidence by showring that .the fact is already admitted.’” Upon this principle, it is, that the admissions of a party, or of those under whom he claims, are admitted, in connection with other evidence, to raise an estoppel; “ and so, too, has it been held, that an admission -which is of the same nature as an estoppel, though not so high in degree, may be allowed to establish facts, which, were it not for the admission, must have been proved by certain steps- appropriated by law to that purpose.” 2 Whar. Ev., § 1086.
It is claimed in the ease before us, that the admissions of the person under .whom the plaintiff claims, in connection with other evidence, worked an estoppel, and was con-
*594 elusive of the fact that she had obtained a divorce, and so was not the wife relict of John Edgar, deceased, and, if they do not rise to so high a degree, that they are admissible as evidence, to be considered in determining whether she had in fact-obtained a divorce. But the question we are now considering, is not the weight and value of the testimony ; it relates solely to its admissibility. Upon that point, the principle of the case of Slatterie v. Pooley, has been followed in Wolverton v. The State, 16 Ohio, 173; Loomis Adm’r. v. Wadhams, 8 Gray, 557; Taylor v. Peck, 21 Grat. 11; Howard v. Smith., 3 Scott’s N. E. 574; Murray v. Gregory, 5 Weis. & Hurl. 468; Pritchard v. Bagshawe, 11 Com. B. 459.
Having shown that admissions of a party, relating to matters contained in written instruments or records, are not excepted from the general rule allowing such 'admissions to be given in evidence, the point under consideration falls within the principles announced by Mr Justice Catron, in delivering the opinion of the court, in the case of Myra Clark Gaines v. Relf, 12 How. (U. S.) 472, 530, as follows:
“ If Zulime was now before the court, claiming her marital interest in Clark’s estate, her declarations made during the alleged coverture tending to show that she was not the wife of Clark, but of Desgrange, would be admissible against her; and if'so, they are also admissible against any one who asserts the same title derived from her, after the declarations were made. Such a case is an established exception to the rule of evidence, excluding declarations of third persons not parties to the record. A declaration emanating from the claimant of any estate, which afterward comes to the parties on the record, by descent or purchase, affecting adversely the estate acquired, may be given in evidence against the party to the record who claims the estate.”
. There was, then, no error in admitting the evidence of the admissions of Sarah Ann, the grantor of the plaintiff, made during her alleged coverture, tending to show that she was not the wife relict of John Edgar, deceased.
*595 2. The remaining question alises upon the overruling of the motion for a new trial. The ground of the motion was, that the judgment was against the law and the evidence.
The plaintiff made a prima facie case, entitling him to recover. If, therefore, the judgment in favor of the defendant can be sustained at all, it must be upon the ground that the evidence was such as to warrant the court in holding, either that Sarah Ann was in law estopped from denying her declarations, that she was divorced from her husband, John Edgar, or that she had in fact obtained such divorce.
The court made no special finding of facts from the evidence ;' therefore, in looking to the evidence, we must, as a reviewing court, assume, in support of the judgment, the facts tó be what the evidence would finally warrant the court to find as the facts of the case.
It is clear that Sarah Ann undertook, and intended to induce the belief, in whatever neighborhood she resided, that, during her absence of three years in parts unknown, she had obtained a divorce. It is also quite clear, that, after waiting in doubt about the matter for five years, John Edgar, desiring to marry again, if he might lawfully do so, sent her father to learn from her what he might rely upon as the truth about her having obtained a divorce ; that she sent back to him assurances of having obtained a divorce ; and that she intended to induce him to believe it, knowing that he might, in reliance on such belief, materially change his condition. The evidence further leaves the strong impression that both Edgar and Eidelia Richardson believed, and upon the faith of Sarah Ann’s declarations consummated their marriage.
It is true that Sarah Ann had no direct communication with Eidelia; but she undoubtedly intended that her assurances of a divorce sent to Edgar should be communicated, as they in fact were, to the woman he desired to marry. The very object of such assurances was to induce his majh riage; and, from the nature of the transaction, it must *596 have been equally her intention that another should be influenced thereby.
Though Sarah Ann did not directly bring about the marriage of Edgar and Fidelia, the court was warranted in finding, from the evidence, that she induced them to believe that, as against any marital right of her’s, they might lawfully marry.
Having acted upon her assurances, and in accordance with her expressed wishes, a strong case was made, which, but for reasons not affecting the substantial justice of the case, called for the application, as against lier, of the principles of the law which would estop her from denying the truth of her declarations.
But, conceding that the declarations of Sarah Ann do not strictly rise to the degree of an estoppel, or can not be regarded as conclusive, still the question remains, whether the court was clearly unwarranted in finding, from the evidence, that Sarah Ann had been divorced. This question is left to be determined solely upon her own acts and declarations during the alleged coverture, and her testimony in the case. But the point for our determination, as a reviewing court, azising upon this state of the ease is, not whether such divorce had in fact been obtained, but whether a finding by the court below that it had, would be clearly unwarranted by the evidence.
In support of a finding that the divorce had been obtained, there are the declarations of Sarah Ann, strenuously persisted izz during a series of years, that it had been obtained. These declarations are corroborated by undisputed facts. She tided to get a divorce with the knowledge of Edgar; after she was defeated by him, she went to parts unknown, avowedly for the purpose of getting a divorce; she was absent during a period sufficiently long to get it; she exhibited to her father papers to show that she had; she induced her husband to marry again; she married again herself. If not divorced, she knowingly was instrumental in bringing herself and her husband into a state of bigamy, and two other persons into that of adultery. Surely, since *597 she concealed the place where the divorce was obtained, a stronger case to establish a divorce, as against her, could not be made. But now, to establish her heirship to the property of the decedent, she has, in a distant state, given her deposition that she never obtained a divorce. In the light of the evidence in the case, her testimony in a matter affecting her own interest can not be regarded as conclusive.
Her declarations may not rise to the degree of an estoppel against her to deny the truth of her declarations. Nor was the court below estopped from regarding her declarations, supported, by the corresponding acts of her life for many years, as more convincing than her testimony now given to win the estate left by the husband she deserted, and, if her declarations be not true, had fraudulently led into the belief that, as against any marital claim of her’s, he might safely die intestate. We can not say that manifestly the court would not be warranted in finding in accordance with her declarations, corroborated by the acts of her life'. Clearly such a finding would be supported by evidence— evidence, too, the truth of which Sarah Ann can not deny without impeaching her own credibility, and can deny only for the purpose of obtaining what, injustice, should be denied to her.
Since, then, the court of common pleas would not be clearly unwarranted in finding, from the evidence, a state of fact that would in law sustain its judgment in favor of the defendant, the judgment of the district court affirming that of the common pleas must be affirmed.

Judgment affirmed.